UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARDIS D. ASHLEY,

        Plaintiff,

v.

MICHAEL BURGESS,

        Defendant.
                              /

Case No. 1:22-cv-145

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Ardis Ashley ("Ashley"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Ashley has sued defendant Warden Michael Burgess. This matter is now before the Court on defendant's motion for summary judgment on the basis of exhaustion (ECF No. 27). Ashley did not oppose the motion.[1]

### I.  Ashley's allegations

Ashley's complaint involves his participation in the MDOC's "Start Program" at Oaks Correctional Facility (ECF). *See* Compl. (ECF No. 1, PageID.5). Ashley was placed in the Start Program due to his mental illness of schizophrenia. *Id*. The program is an alternative to segregation "for prisoners diagnosed with a serious mental illness." *Id*. Ashley's lawsuit, brought pursuant to 42 U.S.C. § 1983, alleged that defendant is subjecting him to cruel and unusual punishment in violation of the Eighth Amendment and that the Start Program at ECF has no

---

[1] W.D. Mich. LCivR 7.2(c) states that "any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials."

1

rational purpose in violation of the Fourteenth Amendment's Equal Protection Clause. *Id*. at PageID.7. In this regard, Ashley alleged:

> 16. As explained to me, the above "Start-unit" restrictions, are not punishment, and they do have a rational purpose for existing.
>
> 17 . The purported rational purpose behind the "Start-Unit's" restrictions are that, prisoners are receiving behavioral and mental-health-therapy, in connection with said "Start-Unit" restrictions (e.g. "Start- Classes", and "Start-Plan").
>
> 18. However, (ECF)- prison is lying about the "Start-Program". There are no "Start-Classes" running. There is no such thing as a "Starts-Plan". (ECF)-prison is not strictly adhering to it's own "Start-Rulebook". The only rules that they are enforcing are the "Start-Unit" restrictions. And because "Start-classes" are not running, "Start-Restrictions", are just extra Punishments.

Compl. at PageID.6. Ashley also seeks to certify a class of prisoners confined to the segregation-housing-unit solely "because of their physical disabilities, or their behavior due to a mental-illness." *Id*. at PageID.4. Ashley seeks $2,000,000.00 in compensatory and punitive damages against ECF Warden Burgess and injunctive relief. *Id*. at PageID.8. The Court subsequently denied Ashley's request for class certification and to consolidate this lawsuit with a similar lawsuit filed at a different correctional facility. *See* Order (ECF No. 15).

## II.    Legal standard

### A.    Summary judgment

Defendant Burgess has moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

> stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, Ashley did not file a response in opposition to the motion for summary judgment.  "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion."  *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

3

### B. Lack of Exhaustion

#### 1. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within

4

five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III. Discussion

In his motion, defendant Burgess reviewed Ashley's grievance history and identified only one grievance filed by Ashley which involves his claim that ECF's Start Program amounts to extra punishment with no classes, No. ECF-21-10-1592-27z ("1592"). *See* Defendant's Brief (ECF No. 28, PageID.115); Grievance 1592 (ECF No. 28-3, PageID.149-154).[2] In the grievance, plaintiff states: that he was approved for the Start Program which is a mental health program "for people designated as S.M.I. [serious mental illness], M.M.D. [sic] or who have behavior problems and have trouble functioning in a general population"; and, that during the period he has been in the Start Program (June 28, 2021 through October 27, 2021) he has been "in the hole", required to use the segregation store, and has not participated in any Start classes. *Id*.

The MDOC rejected Grievance 1592 at Step I on the basis that:

---

[2] Defendant Burgess also identified Grievance ECF-21-09-1394-27b ("1394") which complained that Burgess violated policy by not waiving sanctions because Ashley was in a mental health treatment program. *See* Grievance 1394 (ECF No. 28-3, PageID.155-159). This claim is not part of the present lawsuit.

5

> Prisoners and parolees are required to file grievances in a responsible manner. A grievance shall be rejected by the Grievance Coordinator if:
>
> Two or more prisoners and/or parolees have jointly filed a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest.

*Id*. at PageID.151-153. The record reflects that the MDOC also rejected Grievance 1592 at Steps II and III of the grievance process. *Id*. at PageID.149-154.

Based on this record, Ashley did not properly exhaust a grievance to support his constitutional claims against defendant Burgess. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant's motion for summary judgment should be granted.

### IV.     Recommendation

For these reasons, I respectfully recommend that defendant Burgess' motion for summary judgment on the basis of exhaustion (ECF No. 27) be **GRANTED** and that this lawsuit be **terminated**.

Dated:  April 11, 2024                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).